CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
MAR 2 6 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAULUS IRVIN PERKINS,<br>    Plaintiff, | Civil Action No. 7:07-cv-00526 |
| v. | **MEMORANDUM OPINION** |
| BRYAN WATSON et al.,<br>    Defendants. | By: Hon. James C. Turk<br>Senior United States District Judge |

Proceeding pro se, plaintiff Paulus Irvin Perkins brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Perkins, an inmate at Wallens Ridge State Prison ("Wallens Ridge") in Big Stone Gap, Virginia, alleges that defendants employed at Wallens Ridge have violated his constitutional rights in several respects. Perkins seeks monetary damages and injunctive relief. Defendants have filed motions for summary judgment and Perkins has responded.[1] Therefore, the complaint is ripe for the court's review. For the reasons that follow, the court will grant the defendants' motions as they relate to the Eighth Amendment weight loss claim.[2]

## I. Plaintiff's Claims

Perkins alleges the following sequence of events from which his claims arise. On November 2, 2006, Officer Cox visited Perkins' cell to provide legal mail to Perkins' cellmate, Daniel Pittman.

---

[1] In his response to defendants' motions for summary judgment, Perkins requests to "amend [his] claims" because he "did not realize that he needed address [certain] issues through Grievance Policy first." (Mot. Summ. J. Resp. at 1.) Perkins contends that the "only issue [he] will address to the court will be Eighth Amendment violations" that allegedly caused him to lose fifty pounds during the 372 days that he was in segregation. (Mot. Summ. J. Resp. at 1.) Perkins notes that the "mitigating circumstances" of which he notes in his complaint and response "are only a means of explaining" his weight loss "to the court and why it happened." (Mot. Summ. J. Resp. at 10.) Accordingly, this court will construe Perkins' request as a motion to voluntarily dismiss several of his claims and will grant the motion. Thus, the only remaining defendants, according to Perkins, are Lieutenant Kilbourne, Sergeant Schlobohm, Officer Cox, W. Hensley, and Warden A.P. Harvey, and the only remaining claim pertains to Perkins' weight loss while he was incarcerated in the segregated housing unit.

[2] To the extent Perkins' complaint could be construed to assert claims under state law, the court will decline, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over such claims.

Cox discovered several Virginia State Lottery tickets in the envelope and informed Pittman that he would have to check to see if Pittman could keep them. Cox returned some time later accompanied by Lieutenant Kilbourne, Sergeant Schlobohm, and Officer Mullins. The officers proceeded to search the cell and were apparently arguing with Pittman over the tickets. Perkins alleges that he spoke up in Pittman's defense and that this resulted in Perkins' placement in segregated housing. Perkins complains that the segregation cell in which he was placed was smeared with feces on the wall and the floor and that he was forced to sleep his first night on a bare steel bed with no "protection from the cold" other than a roll of toilet paper. (Compl., Claim 1 at 2.) The next morning Officer Boyd brought Perkins his personal property and bedding. A personal property inventory sheet listed Perkins' headphones as "altered"; however, Perkinds contends that his headphones were not altered, but were given to him because they were broken.

Perkins was also informed of three charges that he allegedly incurred when he "spoke up" including possession of contraband, threatening bodily harm, and disobeying a direct order. (Compl., Claim 1 at 3.) On November 8, 2006, Perkins was found guilty of these charges but complains that he was not afforded the opportunity to request witnesses because the forms were already filled out when they were presented to him to sign. Perkins contends that he had planned on calling Pittman and another inmate in a nearby cell who had observed the November 2, 2006 incident. Perkins' complaint was ignored by Officer Hensley at his hearing so Perkins stated, "I hope you get everything that's coming to you." (Compl., Claim 1 at 4.) Hensley then charged Perkins with threatening bodily harm. Perkins contends that he did not appeal any of the charges because he did not "want to make trouble for [himself]" and because "he knew that all of [his] pleas would fall on deaf ears." (Compl., Claim 1 at 4.)

2

Case 7:07-cv-00526-JCT-mfu   Document 19   Filed 03/26/08   Page 2 of 11   Pageid#: 282

Perkins next alleges that on the evening of January 20, 2007, he informed Officer Taylor that "if he didn't get a trustee over to clean the pod [Perkins] was going to flood [his] cell." (Compl., Claim 2 at 1.) Perkins explains that his true intention was not to flood his cell, but to make contact with a trustee who could buy some tobacco for him. Taylor turned off the water in Perkins' cell, but Perkins informed Taylor that this would not stop him as he could "pop the sprinkler" and flood the cell. Taylor retrieved Lieutenant Kilbourne who then falsely accused Perkins of attempting to commit suicide. Perkins was then escorted to the medical department but, in the vestibule between pods B-1, B-2, and B-3, Kilbourne "circled around . . . really fast, grabbed [Perkins'] neck, and slammed [him] to the floor." (Compl., Claim 2 at 2.) Kilgore "then began pulling [Perkins'] handcuffed arms up from the back with his knees bearing down on the side of [his] head." (Compl., Claim 2 at 2.) Perkins contends that he thought his arm was breaking. Kilgore ultimately released Perkins but informed him that if Perkins "said anything" he was "going to bounce [Perkins'] black ass off the sidewalk." (Compl., Claim 2 at 2.) Kilgore then called Perkins a racial slur and told two other escorting guards, Sergeant Schlobohm and Officer Metnick, to "make [Perkins'] ass trip a couple of times." (Compl., Claim 2 at 2.) Perkins contends that Sergeant Schlobohm attempted to break Perkins' wrists on the way to the medical department. Perkins was ultimately stripped, placed in a "suicide cell," and falsely charged with disobeying a direct order, and spitting on an officer, among other charges. (Compl., Claim 2 at 3.) Perkins was found guilty of these charges and he appealed the convictions.

Perkins explains that he began his first hunger strike in May to "draw some attention to [his] plight." (Conditional Filing Order Resp. at 4.) Perkins was taken to the medical department and he alleges that his weight was listed as 168 pounds, allegedly with leg irons and shackles. Perkins

alleges that the leg irons and shackles, combined, weigh 71 pounds. After eleven days, Perkins contends that he began eating again and was returned to the segregation pod from the medical department. Perkins soon began another hunger strike "to see if anything positive would happen." (Conditional Filing Order Resp. at 4.) Perkins complains that he was not provided with his personal property during this time and that he was ultimately returned to the medical department where Dr. Jones ordered that he be "changed from modified strip cell to full strip cell." (Conditional Filing Order Resp. at 5.) Perkins contends that this was ordered to "further psychologically traumatize an individual [into] compliance." (Conditional Filing Order Resp. at 5.) Perkins also contends that he weighed 161 pounds on May 26, 2007, 155 pounds on May 27, 2007, 152 pounds on May 29, 2007, and 148.5 pounds on June 3, 2007.

Perkins complains that he was unconstitutionally held in segregation from January 2007 until May 2007, and notes that prisoners with more severe infraction records were released earlier than he was released. He suspects that Major Combs and Warden Harvey were responsible for this. Perkins further alleges that, during his time in the segregation unit at Wallens Ridge, he has "experienced acute abuse by the prison administration" because they allow withholding of food as punishment. (Compl., Claim 1 at 4.) Perkins contends that "food is used as a weapon against prisoners at Wallens Ridge" and that this is "torture." (Compl., Claim 1 at 4-5.) Perkins also appears to complain that he is unable to purchase commissary items to supplement his meals. Perkins alleges that he lost approximately fifty pounds[3] during his stay in segregation and complains

---

[3] Perkins specifies that he is 6' 3" tall and that on August 13, 2003, his weight was listed at 217 pounds on a Sussex I State Prison physical. Perkins provides the court with medical records to support this contention. Perkins specifies, however, that his handcuffs weighed approximately 7 pounds so his weight was approximately 210 pounds, rather than 217 pounds on that date. Perkins complains that he weighed 210 pounds when he arrived at Sussex I State Prison, but that he weighed only 172 pounds when he was transferred to Wallens Ridge in
(continued...)

4

that Ms. P Scarberry is partially responsible because she does not "provide adequate nutrition" to the inmates in segregation. (Conditional Filing Order Resp. at 2.)

Defendants disagree with Perkins' version of events and responded to all of Perkins' claims in the motions to dismiss; however, the court will only note the defendants' responses that are relevant to the remaining Eighth Amendment claim concerning Perkins' weight loss. A review of Perkins' medical records by Nurse Stanford, Wallens Ridge Director of Nursing, reveals that Perkins weighed 172 pounds when he arrived at Wallens Ridge on January 25, 2005. On November 2, 2006, Perkins was placed in segregation, as a result of his many disciplinary infractions. On November 23, 2006, Perkins was offered a quarterly segregation physical, which he refused. Perkins was also offered a segregation physical on February 21, 2007, but he again refused.

On May 6, 2007, Perkins was transferred to the infirmary due to the fact that he had missed his sixth consecutive meal. Perkins[4] denied any complaints stating, "I'm gonna get the news media and everybody up here to show what's going on. After I lose so much weight and am successful everybody will follow me." (Mem. Supp. Watson Mot. Summ. J., Ex. 8 at 2.) On May 7, 2007, Perkins stated, "I don't need food I'm a robot." (Mem. Supp. Watson Mot. Summ. J., Ex. 8 at 2.) On May 8, 2007, Perkins had missed approximately nine meals. He complained of not getting enough food in segregation and that his weight had dropped from 190 to 170 pounds during his incarceration in segregation. He continued to refuse food and declined to be examined. On May 12,

---

[3](...continued)
January of 2005. He contends that this is because he had "been in the hole at Sussex I for four months" prior to his transfer. (Mot. Summ. J. Resp. at 11.) The court finds that this complaint has no bearing on the current matter as it is not related to any of the current defendants. If Perkins wishes to file a complaint against certain staff members at Sussex I, then he must file a separate action.

[4] Medical records submitted by Perkins and defendants reveal that Perkins was examined on that date and it appears that his weight was noted as 168 pounds.

5

2007, Perkins began eating and continued to eat his meals through at least May 14, 2007. A nurse's notation on his medical records reveals that he resumed his hunger strike at some time after May 14, 2007, but prior to May 25, 2007. On May 27, 2007, medical staff were able to take Perkins' weight, which was determined to be 155 pounds.[5] On May 29, 2007, Perkins was examined by a physician who noted that Perkins was drinking fluids and that Perkins weighed 152 pounds. The physician's notes indicate that Perkins stated, "They don't give us enough food in medical and in segregation. I am proving a point by not eating." (Mem. Supp. Watson Mot. Summ. J., Ex. 8 at 3.) By 3:35 PM that same day, Perkins began eating.

Perkins again resumed his hunger strike on June 1, 2007. He refused fluids that were offered to him at 11:00 AM, but accepted two cups of ice and two ounces of water at 5:00 PM. He would not take any other fluids offered to him that day. On June 2, 2007, at 8:00 AM, Perkins refused water, stating that he had already had some. It was noted that Perkins had been observed drinking from his sink. At approximately 8:00 PM, Perkins complained of being thirsty and was given six ounces of water, which he drank without difficulty. On June 3, 2007, at approximately 12:20 AM, Perkins complained of being thirsty. He was provided with, and drank, nine ounces of water. He voiced no other complaints at that time. Later that same date, Perkins indicated that he was no longer on a hunger strike and requested a food tray. A tray was provided and Perkins ate most of the food. Perkins weighed 148.5 pounds on that date. On June 4, 2007, Perkins informed medical staff, "I've got a new attitude. I'm eating now." (Mem. Supp. Watson Mot. Summ. J., Ex. 8 at 3.)

Segregation physicals were offered to Perkins on the following dates: June 14, 2007, June 22, 2007, July 5, 2007, August 26, 2007, August 28, 2007, September 13, 2007, and September 27,

---

[5] It was noted that Perkins was wearing boxer underwear and that he had handcuffs on.

2007. Perkins refused the physicals on each of these dates. Perkins was most recently weighed on January 28, 2008, and he weighed 188.5 pounds.

P. Scarberry, Wallens Ridge Food Service Director, informs the court that segregation inmates receive the same foods and portions as the general population inmates. The Food Service follows the master menu issued by the Virginia Department of Corrections ("VDOC"). This menu meets minimum daily nutritional requirements and provides inmates with adequate portions and calories. VDOC policy states that inmates are to receive approximately 2800 calories per day. Inmates are fed three nutritious meals each day except on weekends, when they receive two meals. On weekends, the portions of food are enhanced to ensure that there are sufficient calories. Scarberry states that, to the best of her knowledge, Perkins received appropriate meals that were nutritious and met daily caloric requirements during his time in segregation.

## II. Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at 256-57.

### III. Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In this instance, Perkins appears to allege that he has been denied adequate nutrition due to his extended stay in segregation and, as a result, has lost a large amount of weight. Specifically, Perkins complains that segregation inmates do not receive adequate food portions and that they are unable to supplement their meals by buying food items from the commissary. Defendants concede that Perkins has properly exhausted this claim.

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, Robinson v. California, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. In order to establish an Eighth Amendment violation for cruel and unusual punishment, a plaintiff must show the deprivation alleged was made by defendants with deliberate indifference to the needs of the plaintiff. Wilson v. Seiter, 501 U.S. 294, 297 (1991). The Fourth Circuit held in White v. Gregory, 1 F.3d 267, 269 that, "a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment."

(quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). In this case, Perkins has failed to adequately illustrate any nutritional deprivation by the defendants or that the nutritional provisions at Wallens Ridge constitute a deliberate indifference to his needs. He further fails to allege any serious physical injury. As such, it is clear that defendants' motions for summary judgment regarding this claim should be granted.

Perkins alleges that he lost approximately fifty pounds during his confinement in segregation. However, defendants' affidavit from the Wallens Ridge Director of Nursing as well as supporting medical records demonstrate that Perkins lost approximately twenty-three pounds during his incarceration in segregation between January of 2005 and June of 2007.[6] Defendants also provide evidence that Perkins consistently refused consecutive meals offered to him as part of a hunger strike, and was subsequently examined on numerous occasions by Wallens Ridge medical personnel during his various strikes.[7] See Edwards v. Braxton, No. 7:04-CV-00550, 2005 WL 1388746, at *5 (W.D. Va. June 10, 2005) (noting that, given plaintiff's hunger strike, his claim that he lost weight

---

[6] Perkins' weight was recorded at 172 pounds during his intake procedure in January of 2005; however, Perkins was not placed in segregation until November of 2006. Due to his refusal to consent to physicals during that time period, the court has no way of knowing exactly what Perkins' weight was when he entered segregation in November of 2006. Accordingly, the court must assume that Perkins' weight in November of 2006 was not exceedingly disparate from the 172 pounds noted in January of 2005. The last weight recorded prior to the filing of this lawsuit was in June of 2007. At that time, Perkins weighed 148.5 pounds.

[7] Perkins very clearly excluded Dr. Jones, a Wallens Ridge psychologist, as one of the remaining defendants; however, to the extent that Perkins alleges deliberate indifference to a serious medical need by Dr. Jones or any of the other medical staff, this claim also fails. In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Applying these principles, the court concludes that Perkins has failed to state a claim under the Eighth Amendment. Affidavit evidence and medical records clearly indicate that Perkins was closely observed on a daily basis both by Dr. Jones and the Hunger Strike Management Committee and the Wallens Ridge medical staff and provided with more than adequate medical care during his time in segregation, especially during his hunger strikes.

9

due to the prison diet was both absurd and patently frivolous). Moreover, Perkins was last weighed on January 28, 2008, and it was noted that he weighed 188.5 pounds, more than when he arrived at Wallens Ridge.

In addition, the affidavit of the Wallens Ridge Food Service Director refutes Perkins' claims that the food provided to segregation inmates is inadequate and establishes that the meals provided to inmates, including those in segregation, comport with VDOC standards and requirements. Additionally, all inmates are served the same meals and portions regardless of their segregation status. Perkins has provided no evidence to the contrary. As the Fourth Circuit held in Abcor Corp. v. AM Int'l, 916 F.2d 924, 929 (4th Cir. 1990), "mere assertions by the plaintiffs are not enough to survive summary judgment." Further, the Supreme Court held in Anderson, a plaintiff must provide significant probative and not merely colorable evidence to rebut the movant's evidence. Anderson, 477 U.S. at 249, 250. Perkins fails to allege any specific instances of withholding of food, how food is "used as a weapon" in segregation, or how the food is insufficient. (Compl., Claim 1 at 4-5.) At best, Perkins offers mere assertions and certainly no significant probative evidence.

Therefore, with the evidence provided regarding the consistency of meals provided to all inmates at Wallens Ridge as well as with the documented evidence of Perkins' voluntary refusal to eat meals offered to him over the course of several months, this court finds no genuine issue of material fact on which Perkins could persuade a jury that his Eighth Amendment rights were violated. Thus, defendants' motions for summary judgment on this claim will be granted.[8]

---

[8] To the extent Perkins alleges that his placement in segregation violated a constitutional right, this court finds that such a claim fails. An indefinite duration of confinement in segregation is not unconstitutional in and of itself. See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471-72 (4th Cir. 1999) (finding that long-term placement in segregation or maximum custody is not cruel and unusual punishment); Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir. 1996) (holding that placement in punitive isolation was not atypical and significant deprivation even though prisoner faced restrictions
(continued...)

## IV. Conclusion

For the stated reasons, Perkins' motion to voluntarily dismiss several of his claims will be granted, defendants' motions for summary judgment as to the Eighth Amendment claim will be granted, and Perkins's claims will be dismissed.[9]

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to plaintiff and counsel of record for defendants.

ENTER: This 26th day of March, 2008.

/s/ James C. Turk
Senior United States District Judge

---

[8](...continued)
in mail, telephone, visitation, commissary, and personal-possession privileges). To the extent that Perkins alleges that defendants violated his constitutional rights by prohibiting him from purchasing food items from the commissary while he was in segregation, the court finds that Perkins has failed to allege facts sufficient to rise to the level of an Eighth Amendment violation. Such restriction does not "involve the wanton and unnecessary infliction of pain" or create a condition of confinement that is "grossly disproportionate to the severity of the crime warranting imprisonment," pursuant to Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although the food restrictions may have made Perkins' confinement unpleasant, they were imposed as a consequence of not following prison rules and, therefore, did not involve the wanton and unnecessary infliction of pain under Rhodes. Id.

[9] Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of the court's Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).